# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

Preston Wallace Turbeville
Marissa Martorelli,

        Plaintiffs,

  vs.

RPM Living, LLC,
Gateway Communities of Myrtle Beach, LLC,
   *d/b/a The Willows at Grande Dunes,*
First Advantage Background Services Corp.,
Jenny Suggs, *(individually and in her official capacity)*
Jennifer Battenfeld, *(individually and in her official capacity)*
Andrew O.H. Gardner, *(in his official capacity as Broker-in-Charge)*

        Defendants.

C/A: 4:25-cv-12579-JD-TER

## PLAINTIFFS' UNILATERAL RULE 26(f) REPORT AND PROPOSED DISCOVERY PLAN

Plaintiffs Preston Wallace Turbeville and Marissa Martorelli, appearing *pro se*, respectfully submit this Unilateral Rule 26(f) Report pursuant to Federal Rule of Civil Procedure 26(f) and Local Civil Rule 26.03 (D.S.C.).

## I. STATEMENT OF THE CASE & CORE FACTUAL ALLEGATIONS (Local Rule 26.03(A)(1))

As set forth in the operative pleadings, this litigation arises from a systemic failure by Defendants to adhere to federal consumer protection statutes, state professional licensing requirements, and fundamental standards of care.

Plaintiffs allege discriminatory and retaliatory conduct by property management staff during their residency and application process at The Willows at Grande Dunes, in violation of the Fair Housing Act (FHA) (HUD Inquiry No. 833723). Additionally, Plaintiffs assert claims against First Advantage Background Services Corp. under the Fair Credit Reporting Act (FCRA) for failing to follow reasonable procedures to ensure maximum possible accuracy and failing to conduct a reasonable reinvestigation into disputed background data.

In addition to their credit reporting claims, the Plaintiffs assert causes of action against Defendant First Advantage under the Fair Housing Act (FHA). Specifically, the Plaintiffs allege that First Advantage designed, implemented, and enforced rigid, overbroad criminal history exclusions within its proprietary background screening software and algorithms. By embedding these arbitrary filters into its automated systems, First Advantage acted as a joint tortfeasor in this matter, serving as the critical 'first domino' in a continuous chain of statutory violations that directly precipitated and ultimately resulted in the severe housing deprivation and actionable harm suffered by the Plaintiffs.

Central to the negligence and tort claims is the factual allegation that Defendants Suggs, Battenfeld, and Gardner engaged in property management activities without the

required South Carolina licensure under S.C. Code Ann. § 40-57-135, resulting in negligent supervision and the underlying civil rights violations.

## II. COMPREHENSIVE FACT WITNESS AND NON-EXHAUSTIVE DEPOSITION PLAN (Local Rule 26.03(A)(2))

Plaintiffs identify the following individuals and corporate designees likely to possess discoverable information. Plaintiffs explicitly note that this deposition and witness tracking plan is **strictly non-exhaustive**, and Plaintiffs reserve the absolute right to depose, cross-examine, or call to the stand any additional individuals identified during the ongoing exchange of discovery, individual files, or named on the active Court docket:

- **Preston Turbeville & Marissa Martorelli (Plaintiffs):** Will testify regarding their direct interactions with the property management staff, the application and denial process, their requests for accommodation, and the resulting financial, physical, and emotional damages.

- **Jenny Suggs & Jennifer Battenfeld (Defendants):** Subject to oral deposition regarding their direct interactions with Plaintiffs, their personal licensing status, the unlicensed performance of property management duties, and the execution of the housing lockout at The Willows at Grande Dunes.

- **Paige Norris (RPM Living Regional/District Manager):** Subject to oral deposition regarding corporate operational oversight, corporate ratification of the local lockout, and corporate property policies.

- **Andrew O.H. Gardner (Defendant):** Expected to be deposed regarding corporate management decisions, his role as Broker-in-Charge, corporate oversight, and his specific awareness of the overextended, unlicensed status of property staff while concurrently holding broker status across 16+ separate states.

- **Dan Boyle (Manager / Owner's Representative at Gateway Communities):** Subject to oral deposition regarding corporate operational oversight, management structures, applicant intake policies, historical lease transactions dating back to September 13, 2024, and internal communications relating to the underlying application dispute.

- **Fabien Moody:** Subject to oral deposition regarding direct witness observations, internal property management communications, and knowledge of administrative procedures enforced during Plaintiffs' application process.

- **Rule 30(b)(6) Corporate Designee(s) for RPM Living, LLC:** Expected to testify regarding corporate policies for FHA compliance, application screening, statutory supervision of unlicensed staff, and corporate knowledge/use of RealPage pricing software.

- **Rule 30(b)(6) Corporate Designee(s) for Gateway Communities of Myrtle Beach, LLC:** Expected to testify regarding corporate management policies, fair housing training, bank account management relative to leasing financial instruments, and third-party background check reliance.

- **Rule 30(b)(6) Corporate Designee(s) / Armenio Sandoval for First Advantage:** Will testify regarding the specific procedures, software metrics, and algorithms used to generate Ms. Martorelli's background report, FCRA compliance, and internal processes for handling consumer disputes.

- **RPM Living/RealPage "Pricing Advisors" (Names to be Identified):** Expected to testify regarding the utilization of the RealPage algorithm ("Auto Pilot" features) to demonstrate Defendants' pattern of deceptive trade practices and reliance on automated systems over compliance.

- **Rochelle Wright, LISW-CP (Oceanic Counseling Group):** Subject to testify as a treating therapist regarding her clinical observations of Ms. Martorelli, the course of treatment, and the specific symptoms of emotional distress.

- **Cynthia Watson, LISW-CP (R.E.A.L. Counseling, LLC):** Subject to testify as a treating provider regarding emotional distress and mental anguish necessitated by Defendants' conduct.

- **Dr. Kathryn Cheney:** Outpatient psychiatric provider for Marissa Martorelli, possessing discoverable information regarding her psychiatric treatment, medication management, and medical baseline.

- **Dr. Barbara A. Palmer, M.D. (Bergen New Bridge Medical Center):** Attending physician during Marissa Martorelli's inpatient admission.

- **Dr. Abigail Escalante Dy, M.D. & Dr. Cara Seay Ferguson, M.D. (MUSC Health):** Treating physicians for Preston Turbeville, expected to testify regarding

his medical treatment, chronic insomnia, sleep studies, and physical manifestations of distress.

- **Teresa Turbeville, Kathy Martorelli, & Taylor Turbeville:** Will testify as lay witnesses under Fed. R. Evid. 701 regarding their personal observations of the Plaintiffs' emotional distress, physical health decline, and the overall disruption to Plaintiffs' lives.

- **Docket & Filing Catch-All Provision:** Any other employee, executive, corporate representative, agent, or third-party witness mentioned, referred to, or identified within the parties' collective pleadings, formal motions, pending discovery files, or anywhere on the official Court docket in this matter.

*Note on Medical Evidence:* Rather than calling all aforementioned providers to testify live, Plaintiffs intend to rely on their certified medical records pursuant to Fed. R. Evid. 902(11) and will file the appropriate notices of records custodian affidavits.

## III. EXPERT WITNESS DISCLOSURE PLAN (Local Rule 26.03(A)(3))

Plaintiffs will formally designate expert witnesses pursuant to the deadlines established in the Court's Scheduling Order. **At this initial stage, the Plaintiffs explicitly notify the Court that they have not yet finalized the precise structural breakdown of their expert presentations. The Plaintiffs have not yet determined which specific experts will be called to provide live oral testimony at trial, which experts will submit their testimony via sworn affidavits or records custodian certifications, or the final allocation between retained and non-retained expert roles.** Subject to this

non-binding reservation, the Plaintiffs currently anticipate offering expert proof in the following subject matters:

- **Medical Causation & Baselines (Treating Providers):** Plaintiffs will rely on medical evidence generated by their current and prior treating providers. Plaintiffs reserve the right to designate these treating physicians and therapists (including Rochelle Wright and Cynthia Watson) as non-retained experts regarding baseline diagnoses, prognosis, and physiological impacts caused or exacerbated by Defendants' conduct.

- **Property Management Standard of Care (Retained Expert):** Plaintiffs anticipate designating an industry expert to opine on standard industry practices versus Defendants' automated strategies, the standard of care required for FHA compliance, and the statutory obligations under S.C. Code Ann. § 40-57 regarding supervision of unlicensed staff.

- **FCRA Compliance (Retained Expert):** Plaintiffs reserve the right to designate an expert in consumer reporting to opine on industry standards for "maximum possible accuracy" and reasonable reinvestigation procedures under 15 U.S.C. § 1681.

## IV. SUMMARY OF CLAIMS AND DEFENSES (Local Rule 26.03(A)(4))

Plaintiffs intend to prevail on the following active causes of action:

1. **Fair Housing Act Violations (Discriminatory Practices & Failure to Accommodate):** 42 U.S.C. § 3604(f).

2. **Fair Credit Reporting Act Violations (Inaccurate Reporting & Non-Permissible Access):** 15 U.S.C. § 1681.

3. **Negligence Per Se / Unlicensed Property Management:** S.C. Code Ann. § 40-57-135 (Establishing that the performance of unlicensed property management activities constitutes a per se breach of the standard of care).

4. **Common Law Negligent Hiring, Retention, and Supervision:** South Carolina Common Law (Governed by *James v. Kelly Trucking Co.*, 377 S.C. 628 (2008), establishing the direct liability of an employer who deploys severely unfit, unlicensed personnel).

5. **Retaliation and Interference with Fair Housing Rights:** 42 U.S.C. § 3617 Arising from the immediate, retaliatory file closure and administrative systems blackout executed by Defendants following the Plaintiffs' protected civil rights assertions, as well as Defendant First Advantage's unlawful retrieval of personal data without a permissible purpose approximately one month after a HUD complaint had been formally initiated and the underlying business relationship was completely severed.

## V. ESI AND CONFIDENTIALITY (Fed. R. Civ. P. 26(f)(3))

To facilitate the swift and secure exchange of information, the disclosure of sensitive files is strictly governed by the Confidentiality Order entered by Magistrate Judge

Rogers on May 5, 2026. The Plaintiffs note for the record that they have already fully served their complete medical records from MUSC and Bergen New Bridge, their Social Security Administration (SSA) disability documentation, and the actual verbatim audio transcripts of crucial property management voicemails directly on defense counsel.

The exchange of any remaining or supplemental ESI will be conducted in native or PDF format, including pending disclosures regarding Defendant First Advantage's proprietary background screening algorithms.

Plaintiffs also intend to utilize public records from related external litigation (including but not limited to the Florida Antitrust Class Action *Corradino v. RealPage, Inc., et al.*, Case No. 1:23-cv-20172; the Kentucky Attorney General Lawsuit, Case No. 2:24-cv-00092; and *McNeely v. RPM Living, LLC, et al.*, Case No. 2:25-cv-00345 in the District of Nevada) as evidentiary support for their direct corporate negligence claims.

## VI. BREAKDOWN OF DISCOVERY STATUS AND GLOBAL REQUEST FOR A 32-DAY STAY OF MOTION BRIEFINGS (Local Rule 26.03(A)(5))

The Plaintiffs respectfully inform the Court that the discovery and pleading tracks in this action have become fundamentally fractured due to a combination of defense non-compliance, severe firm-wide ethical conflicts, and unexpected extension requests. To preserve the record and act with absolute fairness toward opposing counsel, the Plaintiffs are concurrently filing a formal **Motion for a 32-Day Modification of the Scheduling Order and a Temporary Stay of Briefing Deadlines** alongside this Report.

The individual tracks stand as follows:

## A. The RPM Defendants' Production and Sworn Omissions:

The Plaintiffs wish to explicitly note for the record that the RPM Defendants appear to have provided extensive business records late on the evening of June 4, 2026, with no current evidence of any documents being intentionally withheld. The Plaintiffs greatly appreciate the professionalism, clear disclosure, and good-faith cooperation demonstrated by the RPM defense team.

However, a preliminary administrative review reveals a critical, systemic procedural gap: the RPM Defendants' entire discovery responses completely lack the mandatory corporate and individual verification pages executed under oath and penalty of perjury as strictly required by **Federal Rule of Civil Procedure 33(b)(3)**. A party cannot provide unsworn, legally unverified responses as active discovery entries. Accordingly, the Plaintiffs have formally issued a 15-day deficiency notice to counsel for the RPM Defendants, granting them up to and including June 19, 2026, to supplement the record with contractually admissible, sworn client signatures certifying their responses in their entirety.

## B. Defendant First Advantage's Willful Contempt of a Direct Court Order:

While the RPM track remains non-compliant due to a failure to serve legally mandated client verifications under oath, Defendant First Advantage has escalated to open defiance of a direct judicial mandate. June 4, 2026, was the final deadline under this Court's explicit 30-day order for First Advantage to fully produce its outstanding files.

First Advantage flatly defaulted. They insulated ninety percent (90%) of the Plaintiffs' written requests with evasive, boilerplate objections to avoid producing the data asked for. Even worse, for the very few requests where they did not object, First Advantage deceptively answered that they 'will produce' the materials, yet allowed the clock to run out without delivering a single page or offering any communication to the Plaintiffs. The deadline has passed, no documents exist in production, and the defense remains silent. (Note: First Advantage also has not provided the mandatory corporate and individual verification pages executed under oath and penalty of perjury as strictly required by **Federal Rule of Civil Procedure 33(b)(3).)**

Having possessed these files since November 25, 2025, and having just exhausted a 30-day judicial grace period, First Advantage's ongoing stonewalling constitutes a clear default. Because First Advantage has proven it treats this Court's explicit mandates as optional, standard discovery channels have completely broken down. Accordingly, the Plaintiffs have issued a final 15-day deficiency notice to cure. Should First Advantage fail to completely wipe out these objections and produce the native files by June 19, 2026, the Plaintiffs will move for severe sanctions under **Fed. R. Civ. P. 37(b)(2)** and petition the Court to appoint an independent, forensic **Special Master under Fed. R. Civ. P. 53** to seize the native, self-authenticating server data streams and database transaction metadata directly from First Advantage's infrastructure pursuant to **Fed. Rule of Evidence 902(13) and (14)**, ideally, at First Advantage's sole expense.

## C. Defendant Gateway Communities' Ethical Fracture and Compounding Extension Requests:

The logistical infrastructure of multiple defense firms has completely shifted over the last 24 hours. At 4:16 PM on June 4, 2026, Gateway's defense counsel, Meagan L. Allen, Esq. of Fisher Phillips LLP, formally notified the Plaintiffs via email that an internal, unwaivable conflict of interest has arisen within her firm requiring their immediate withdrawal. Ms. Allen requested a substantial 32-day extension up to and including July 6, 2026, to allow incoming substitute counsel necessary time to onboard the file and finalize discovery responses. At 6:47 PM on June 4, 2026, the Plaintiffs provided Ms. Allen with written notice of their conditional consent to Gateway's request, predicated strictly on ensuring zero calendar compression or prejudice to the Plaintiffs' procedural rights.

Compounding this delay, on the morning of June 5, 2026, at 11:57 AM, counsel for the RPM Defendants, Adam N. Yount, Esq. of Haynsworth Sinkler Boyd, contacted the Plaintiffs via email to request an urgent 21-day extension of the upcoming June 9, 2026 deadline for the Defendants' Reply to their Motion to Dismiss and Oppositions to Plaintiffs' pending motions, seeking to push that track to June 30, 2026.

**The Structural Shifting of Administrative Burdens onto the Plaintiffs:** Ultimately, the Defendants' rolling wave of discovery omissions amounts to an impermissible litigation tactic: an attempt to force pro se Plaintiffs to expend their limited time identifying basic, structural errors that any competent federal practitioner should have prevented before service. It is **fundamentally** not the job of pro se litigants to teach national corporate defense firms the basic mechanics of the Federal Rules of Civil Procedure. The Plaintiffs have had to diligently, exhaustively, and independently

research, learn, and apply the strictures of the Federal Rules, sacrificing immense personal and professional time to ensure compliance on the record. For these highly capitalized defense teams to turn around and serve raw, unsworn, uncertified papers (relying on the Plaintiffs to either overlook the defects or spend hours tracking them down) is a bad-faith abuse of the system. The Federal Rules carry a non-delegable duty of objective compliance under Rule 26(g); they are not optional guidelines that a multi-million-dollar corporation can ignore until a pro se opponent catches them.

## D. Proposed Solution: A 32-Day Temporary Stay on Motion Briefings Only:

Strictly out of a desire to act with absolute fairness and professional courtesy toward opposing counsel, the Plaintiffs have moved the Court for a unified, clean **32-day temporary stay of all response and briefing deadlines for all outstanding motions up to and including July 6, 2026.** This short stay will allow Defendant Gateway's incoming counsel to safely onboard, allow the RPM defendants adequate time to manage their pending briefings, and prevent the piecemeal, chaotic filing of motions while the defense landscape is actively shifting.

Crucially, the Plaintiffs request that **all underlying discovery production, verification mandates, and 15-day cure windows for the unconflicted defendants remain entirely active and unstayed.** As a matter of basic operational reality, the Plaintiffs cannot safely, effectively, or meaningfully proceed to take oral depositions of corporate representatives and key witnesses without first receiving the complete, sworn, and contractually verified universe of requested documentary evidence.

The Plaintiffs respectfully request that upon the expiration of this temporary stay on **July 6, 2026**, the Court formally issue a new, comprehensive Scheduling Order resetting all remaining litigation targets. (Or go ahead and issue a new Scheduling Order with the 32 day stay incorporated)

## VII. JURY DEMAND (Fed. R. Civ. P. 48(a))

Plaintiffs have previously made a timely demand for a trial by jury in their operative pleading. Given the complexity of the federal statutory claims, the severe nature of the emotional and physical damages, and the critical public interest in civil rights enforcement, Plaintiffs respectfully request a jury of twelve (12) members to hear this matter, pursuant to the provisions of Federal Rule of Civil Procedure 48(a).

## VIII. STATUS OF SUBPOENAS, FOIA RECORDS, AND AGENCY FINDINGS

Plaintiffs notify the Court that previous requests for judicial intervention to obtain investigative files from the South Carolina Human Affairs Commission (SCHAC) and the Department of Labor, Licensing and Regulation (LLR) are now moot, as Plaintiffs successfully secured these complete files via state FOIA requests.





While Rule 45 discovery subpoenas for these specific documents are no longer needed, Plaintiffs intend to issue subpoenas for trial testimony to hostile witnesses, corporate designees, and corroborating lay witnesses once the Court opens the trial schedule.

**Reservation of Rights Regarding SCHAC Investigative File:**

While Plaintiffs have identified the SCHAC investigative file (HUD Inquiry No. 833723) for the purposes of transparency and pretrial discovery, Plaintiffs expressly reserve the right to file Motions in Limine to exclude any agency findings, conclusions, or determinations from being introduced as evidence at trial. Plaintiffs are entitled to a *de novo* review by this Court. The underlying administrative investigation was procedurally deficient, incomplete, and did not afford Plaintiffs the procedural safeguards of a federal trial. Therefore, any administrative findings are non-binding, and their introduction at trial would be highly prejudicial, misleading to a jury, and subject to exclusion under Federal Rule of Evidence 403.

Respectfully submitted,

Dated: June 8, 2026
June 9, 2024

**Preston Wallace Turbeville** 173 Gadwall Way, Unit 3400

Murrells Inlet, SC 29576

pwallace92@yahoo.com

Plaintiff, Pro Se _____

**Marissa Martorelli** 173 Gadwall Way, Unit 3400

Murrells Inlet, SC 29576

marissamartorelli@icloud.com

Plaintiff, Pro Se _____

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of **June, 2026**, I am physically filing the foregoing "Plaintiffs' Unilateral Rule 26(f) Report" with the Clerk of Court for the United States District Court for the District of South Carolina Florence Division, which will serve a true and accurate copy via the Court's electronic filing system (CM/ECF) or via electronic mail to all counsel of record.

Preston Turbeville

Marissa Martorelli