# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

Preston Wallace Turbeville
Marissa Martorelli,

  Plaintiffs,

  vs.

RPM Living, LLC,
Gateway Communities of Myrtle Beach, LLC,
  *d/b/a The Willows at Grande Dunes,*
First Advantage Background Services Corp.,
Jenny Suggs, *(individually and in her official capacity)*
Jennifer Battenfeld, *(individually and in her official capacity)*
Andrew O.H. Gardner, *(in his official capacity as Broker-in-Charge)*

  Defendants.

C/A: 4:25-cv-12579-JD-TER

JUN 12 '26 AM10:26
RCV'D - USDC FLO SC

**PLAINTIFFS' REPLY TO THE RPM DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

NOW COME the Plaintiffs, Preston Wallace Turbeville and Marissa Martorelli, proceeding pro se, and respectfully submit this Reply to the RPM Defendants' Response in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 109).

INTRODUCTION

The RPM Defendants' opposition relies entirely on an incomplete, highly sanitized narrative that actively avoids the underlying procedural record and the extensive physical evidentiary attachments currently sitting before this Court. Defendants ask this Court to deny leave to amend under the pretense of "undue delay" and "futility". However, the historical record demonstrates that any extensions to the timeline within this action were driven exclusively by the defense track's ongoing non-compliance, rolling extension requests, multi-defendant demands for clarification, and complex counsel transitions. The proposed Second Amended Complaint stands as an unassailable, evidence-backed fortress that completely moots their prior motions to dismiss.

I.   DEFENDANTS CANNOT ACCUSE PRO SE PLAINTIFFS OF DELAY WHEN THE TIMELINE WAS SEIZED BY THE DEFENSE

Defendants assert that this matter has been active for approximately nine months as if the Plaintiffs have engaged in a pattern of dilatory tactics. This is a patent misrepresentation of fact. The absolute reality of this docket's history is itemized below:

1. November 25, 2025 (Initial Discovery Served): Plaintiffs immediately initiated discovery tracking loops within weeks of bringing the case into proper form by serving comprehensive initial written requests upon all appearing defense counsel.

2. December 2025 – April 2026 (The Defense Omission and Clarification Delays): The case was repeatedly slowed by the defense track because various defendants kept asking for rolling calendar extensions, demanding extensive procedural clarifications, and in multiple instances, falsely certifying to the Court that they had not received Plaintiffs' initial discovery requests. Plaintiffs were forced to expend limited personal and professional resources unearthing raw email metadata to produce the explicit, black-letter response from defense counsel reading: "Received, thanks Preston".

3. May 5, 2026 (Judicial Re-Alignment and Procedural Clarity): Following numerous multi-party motions and standard procedural adjustments to manage the evolving multi-defendant docket, this Court entered Text Order ECF No. 82 and an Amended Scheduling Order (ECF No. 84). This judicial intervention completely resolved the preceding procedural unclarity that had temporarily constrained the multi-party framework, cleanly resetting the litigation track and granting the defendants a new 30-day window to finally respond to Plaintiffs' outstanding discovery requests.

4. May 27, 2026 (Timely Operational Drop): Operating strictly within the mandatory boundaries and calendar constraints hardcoded by this Court's active scheduling order, Plaintiffs hand-delivered and filed their Motion for Leave to File the Second

Amended Complaint well in advance of the Court's explicit June 30, 2026 deadline for amending pleadings.

As shown above, Plaintiffs have acted with absolute, unyielding diligence. While the multi-party framework naturally create a degree of procedural navigation, the Plaintiffs have in no way, shape, or form caused this litigation to stall or be delayed. The defense has absolutely zero hard evidence to prove any such claim, as the record shows the core delays rest entirely on their own discovery resistance, clarification demands, and extension requests.

## II. THE LEVEL OF DETAIL IN THE SECOND AMENDED COMPLAINT WAS REQUIRED TO DEFEND AGAINST THREE COMBINED MOTIONS TO DISMISS

The RPM Defendants complain extensively about the size and detail of the proposed Second Amended Complaint. This argument completely ignores the reality of the defensive perimeter they erected. This litigation involves six separate individual and corporate defendants represented by three completely separate corporate law firms. These three law firms launched an aggressive, multi-front tactical attack by filing three combined Motions to Dismiss, collectively claiming that the Plaintiffs' initial pleadings contained fatal factual deficiencies. Plaintiffs did not expand this complaint to cause delay; rather, Plaintiffs were legally compelled to draft a detailed pleading to systematically incorporate highly specific facts, regulatory timelines, and transactional receipts to directly answer and cure every single alleged deficiency leveled by the three

law firms. This level of detail is a direct, necessary response to the defendants' own heavy motion practice to ensure the claims survive under the federal pleading standards.

III. THE AMENDMENT IS THE POLAR OPPOSITE OF FUTILE: THE PERMANENT RECORD CONTAINS AN OVERWHELMING FORTRESS OF PHYSICAL EVIDENCE

The RPM Defendants' boilerplate claim that the Second Amended Complaint is "futile" and lacks an actionable legal basis is flatly contradicted by an overwhelming mountain of physical records, native emails, voicemails, agency disclosures, and financial instruments already woven deeply into this docket since the filing of the initial and First Amended Complaints:

A. Corporate Refund Check No. 546 Establishes Inseparable Standing: Defendants' pending Rule 12(b)(6) motions rely heavily on the argument that Plaintiff Turbeville lacks direct structural standing under the Fair Credit Reporting Act (FCRA). Exhibit B completely demolishes this defense. It displays an unedited copy of Corporate Refund Check No. 546, drawn natively on Wells Fargo Bank on May 15, 2025, issued by the corporate defendants as a single, un-fragmented return made payable jointly to both Preston Turbeville and Marissa Martorelli. The corporation's own financial routing ledger proves that the housing application operated as an indivisible commercial package funded entirely by Turbeville's personal credit capital. He is an active consumer-applicant within the zone of protection, satisfying federal standing metrics.

B.  The Summary Court Index Establishes Conductive Agency: Defendants assert that site-level managers Jenny Suggs and Jennifer Battenfeld did not require real estate licensure and lacked authority to bind the corporate owner. Exhibit C completely breaks this shield. Plaintiffs have entered the formal Horry County Summary Court Ejectment Affidavit (Case No. 2025CV261092140), executed under penalty of perjury by Defendant Suggs on May 6, 2025. In that public judicial filing, Suggs swears under oath that she is the "landlord-lessor" and "Community Manager" executing authoritative legal property actions on Gateway's direct behalf. The defense cannot claim out of court that she was a mere clerical assistant while simultaneously deploying her to file sworn execution affidavits to state magistrates.

C.  The First Advantage Consumer Report and Legal Criminal Overrule: The permanent record contains the initial First Advantage consumer background report that directly triggered the housing denial, explicit on its face that the application "Failed for Criminal History." This report is coupled with written correspondence from Plaintiff Martorelli's New Jersey defense counsel proving that the underlying charge was an out-of-state municipal ordinance violation, which under New Jersey law is explicitly not considered a crime. A forthcoming affidavit from the same defense attorney will re-confirm that First Advantage severely misreported this minor municipal ordinance violation as a disqualifying criminal felony burglary and theft.

D.  Black-and-White Proof of a Clear Request and Immediate, Unlawful Refusal of a Reasonable Accommodation: Filed directly within the initial complaints are extensive, clear email records showing Plaintiffs making an explicit, formal request for a reasonable accommodation under the Fair Housing Act. The emails show

Plaintiffs explaining in black and white that the underlying out-of-state charge arose from a direct mental health episode and disability, and requesting that the property overlook the inaccurate background reporting. The subsequent email chains and voicemails prove that the property staff flatly refused to evaluate the accommodation request or participate in the mandatory interactive process. Instead, property staff tried to pass the buck, telling Plaintiffs that First Advantage had to completely finalize the dispute and fix the report before they would even consider them. Furthermore, the RPM defendants have taken the highly hypocritical out-of-court position that they lacked "reason to believe" a disability existed because Plaintiffs did not provide physical medical paperwork. The written record completely exposes this lie, showing that the defendants flatly refused to accept or review any documentation. No reasonable person could expect a disabled consumer to broadcast highly sensitive, private medical records or disability benefit files to a corporate leasing office that has already put in writing that they refuse to consider or accept any such proof.

E. FCRA Disclosure Violations and Impermissible Information Pulls: The record contains extensive written evidence showing that Plaintiffs requested a full file disclosure from First Advantage as strictly mandated by federal statutory deadlines, which First Advantage failed to provide within the legally required timeline. Furthermore, the record contains written inquiries from Plaintiffs demanding to know why First Advantage pulled and transferred their consumer report data to RPM Living a second time, a month after Plaintiffs had already formally withdrawn

their interest in the apartment due to discriminatory fears and had never authorized any renewed application processing.

F. Serious Chronological Retaliation and the Unlicensed Manager Scramble: The docket displays a tight, undeniable timeline of retaliatory conduct. On June 16, 2025, the South Carolina Human Affairs Commission officially finalized and logged Plaintiffs' formal housing discrimination complaint into the state system. In an extraordinary, non-coincidental turn of events:

1. On that exact same day, June 16, 2025, Defendant Jenny Suggs suddenly reached out to the Plaintiffs to pretextually "re-offer" the apartment, despite the corporation having already issued a canceled move-in notice and a refund check a month prior.

2. Within that exact same week, Defendant Jenny Suggs—fully aware that she was facing impending federal and state housing investigations—frantically submitted an application to activate a real estate license that she had allowed to sit completely inactive since 2012.

This discovery proves that the defendants were scrambling to retroactively shield themselves from statutory regulatory liability after realizing their discriminatory conduct was being formally investigated by HUD and SCHAC.

IV. THE DEFENDANTS' OPPOSITION LACKS EQUITY WHILE THEY SIMULTANEOUSLY BLOCK THE DISCOVERY TRACK

It is a basic maxim of federal equity that a party cannot seek favors from the court while actively obstructing the process. The RPM Defendants are asking this Court to deny the Plaintiffs their fundamental right to file an amended complaint under the guise of an incomplete record, while simultaneously sandbagging the litigation track by withholding the very evidence needed to finalize it.

Plaintiffs served detailed, good-faith written discovery requests on November 25, 2025. To date, the defense track has responded with nothing but boilerplate objections, unverified text blocks, and a total refusal to supply mandatory corporate verifications or privilege logs. They cannot block discovery on one hand and claim an amendment is futile on the other.


## V. PLAINTIFFS PERFECTLY SATISFY THE FOURTH CIRCUIT STANDARD FOR ACCEPTING AMENDED PLEADINGS


Under Federal Rule of Civil Procedure 15(a)(2), courts are instructed to "freely give leave when justice so requires." The United States Court of Appeals for the Fourth Circuit has hardcoded a strict, mandatory framework governing this rule, holding that a motion for leave to amend should be accepted in all instances unless the defense can explicitly prove the existence of specific disqualifying factors. Plaintiffs satisfy these requirements completely under the law:

1. Absence of Bad Faith: Plaintiffs are utilizing this amendment in complete good faith to conform the operating pleadings to the critical public data, agency records, and native transactional files unearthed throughout the litigation process. Furthermore, Plaintiffs have demonstrated absolute good faith and respect for judicial economy by using this amendment to voluntarily withdraw the state law SCUTPA count and narrow the FCRA sub-theories to streamline the scope of the trial.

2. Absence of Undue Delay: As documented by the record, Plaintiffs hand-delivered this motion on May 27, 2026—more than an entire month prior to the Court's active, operative June 30, 2026 deadline for the amendment of pleadings established under the Amended Scheduling Order (ECF No. 84).

3. Absence of Prejudice to the Defendants: Defendants cannot claim unfair surprise or prejudice. The core causes of action—Fair Housing Act discrimination and FCRA consumer reporting violations—remain entirely identical. This amendment simply provides necessary clarifying sub-theories and direct physical evidence that the defendants have already possessed within their own corporate systems since May 2025.

4. Discovery is Wide Open: Most importantly, discovery tracking remains completely wide open across all multi-party tracks. The scheduling framework allows the defendants ample, uninhibited time to issue written interrogatories, demand

admissions, request corporate files, and depose any and all witnesses or parties pursuant to their standard litigation prerogatives.

5. Absence of Futility: An amendment is only futile if it cannot survive a motion to dismiss. As detailed heavily above, the presence of direct financial instruments, state court sworn affidavits, consumer data logs, and documented agency timelines provides an unassailable factual foundation that renders the claims highly plausible, completely defeating the defendants' generic boilerplate challenges.

CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Honorable Court exercise its sound discretion to grant their Motion for Leave to File the Second Amended Complaint, order the Clerk to immediately enter Exhibit A as the active operating complaint within this action, and deny the Defendants' pending Motions to Dismiss as completely moot as a matter of law.

Respectfully submitted,

Dated: June 10, 2026

Preston Wallace Turbeville, Plaintiff Pro Se

173 Gadwall Way, Unit 3400

Murrells Inlet, SC 29576

pwallace92@yahoo.com

Marissa Martorelli, Plaintiff Pro Se

173 Gadwall Way, Unit 3400

Murrells Inlet, SC 29576

marissamartorelli@icloud.com

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June, 2026, a true and accurate copy of the foregoing

Plaintiffs' Reply to the RPM Defendants' Response in Opposition to Motion for Leave to File

Second Amended Complaint is being served upon all appearing counsel of record via ECF

notification after being filed by the Clerk of Court.