IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| PRESTON WALLACE TURBEVILLE and MARISSA MARTORELLI, <br><br> Plaintiffs, <br><br> v. <br><br> RPM LIVING, LLC; GATEWAY COMMUNITIES OF MYRTLE BEACH, LLC d/b/a THE WILLOWS AT GRANDE DUNES; FIRST ADVANTAGE BACKGROUND SERVICES CORP.; JENNY SUGGS (individually and in her official capacity); JENNIFER BATTENFELD (individually and in her official capacity); and ANDREW O.H. GARDNER (Broker-in-Charge for RPM Living, <br><br> Defendants. | C/A No. 4:25-cv-12579-JD-TER <br><br> **DEFENDANT FIRST ADVANTAGE BACKGROUND SERVICES CORP.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

Defendant FIRST ADVANTAGE BACKGROUND SERVICES CORP. submits this

Reply in Support of Its Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 87)

and Response in Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint

(ECF No. 98).

## BACKGROUND

### A. Facts in Plaintiffs' Pleadings and Exhibits[1]

In 2018, Plaintiff Marissa Martorelli pled guilty to disorderly conduct in violation of Section 356-6 of the Borough of Franklin Lakes, New Jersey Code of Ordinances. (*See* ECF No. 98-1, Plaintiffs' proposed Second Amended Complaint ["SAC"] ¶ 44; ECF No. 1-1 at 66–68.) That ordinance incorporates "statutes, regulations, ordinances and other applicable rules and regulations regarding disorderly persons" and provides that "any person in violation thereof shall be subject to punishment as provided by law." Borough of Franklin Lakes Code of Ordinances § 356-6.[2] The ordinance further provides that, "upon ***conviction***," a person shall "be punished by a fine not exceeding $200 for each offense or by imprisonment for a term not exceeding 30 days, or both, plus the cost of any damages." *Id.* § 356-16 (emphasis added). In light of her conviction, Martorelli was ordered to pay $330 in fines, costs, and other miscellaneous amounts. (ECF No. 1-1 at 68.)

In May 2025, Plaintiffs applied for housing at The Willow at Grande Dunes. (SAC ¶¶ 7, 12.) The property manager, Defendant RPM Living, LLC, ordered background reports on Plaintiffs from First Advantage and denied Plaintiffs' application due to information in Martorelli's report related to her 2018 conviction. (SAC ¶ 7; ECF No. 1-1 at 38, 40.) Specifically, RPM required applicants to have "no criminal records (excluding DWI and

---

[1] "In addition to the complaint itself, [courts] must consider any documents attached to the complaint as exhibits" when deciding a motion to dismiss. *Field v. Berman*, 526 F. App'x 287, 289 (4th Cir. 2013). The document attached as "Exhibit H" to Plaintiff's proposed Second Amended Complaint, ECF No. 98-8, incorporates the "[e]xhibits attached to [Plaintiffs'] original complaint," ECF Nos. 1-1, 1-2, and 1-3.

[2] *Available at* https://ecode360.com/7173840#7173853. "Municipal ordinances that are available online . . . constitute public records and are subject to judicial notice." *Hena v. Vandegrift*, No. 18-762, 2020 WL 1158640, at *25 (W.D. Pa. Mar. 10, 2020) (collecting cases).

DWLS),” and, on May 13, 2025, First Advantage reported that Martorelli did not satisfy that requirement. (*Id.*) The next day, Martorelli contacted First Advantage to dispute her report under Section 1681i of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (“FCRA”). (ECF No. 1-1 at 164.)

On May 17, 2025, Martorelli sent a letter to RPM claiming that an unspecified “mental health condition” led to her 2018 conviction. (SAC ¶ 8; ECF No. 1-1 at 10; ECF No. 98-8 at 3.) Martorelli asked for a “reasonable accommodation” and offered “to discuss [the] matter further if needed.” (*Id.*) In response, RPM asked Martorelli to explain the nature of her conviction to First Advantage so that RPM could “rerun the screening” after First Advantage completed its reinvestigation. (*See* SAC ¶ 72; ECF No. 98-8; ECF No. 1-1 at 26, 70.) RPM tried to assist Martorelli with the dispute process and even offered to “call First Advantage together.” (ECF No. 1-1 at 24.) But instead of allowing the dispute process to unfold, Plaintiffs claimed that they were “no longer . . . comfortable moving forward” given RPM’s refusal to immediately approve their application. (ECF No. 1-1 at 29–30.)

On June 16, 2025, First Advantage completed its reinvestigation of Martorelli’s dispute, removed the disputed information, and issued a revised report to RPM. (SAC ¶ 72; ECF No. 1-1 at 37, 164.)[3] That same day, RPM invited Plaintiffs to reapply for the apartment, which would have allowed Martorelli to obtain the accommodation she initially requested. (ECF No. 1-1 at

---

[3] First Advantage’s removal of the disputed information does not mean that it was inaccurate. When a consumer disputes information, consumer reporting agencies must modify or “promptly delete” the information if it is “found to be inaccurate or incomplete *or cannot be verified.*” 15 U.S.C. § 1681i(a)(5)(A) (emphasis added). The deletion or modification must be completed within thirty days of the dispute. *Id.* § 1681i(a)(1)(A). First Advantage did not receive the court records needed to verify the information disputed by Martorelli within thirty days of her dispute. Thus, as required by the FCRA, First Advantage deleted the disputed item of information.

37.)  Plaintiffs refused and instead claimed that RPM's receipt of a revised report from First Advantage violated the FCRA.  (SAC ¶ 74; ECF No. 1-1 at 83.)

### B.  Plaintiffs' Claims

In their First Amended Complaint, Plaintiffs asserted claims under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), the FCRA, and South Carolina common law.  (*See* ECF No. 83.)  All Defendants moved to dismiss, and Plaintiffs responded by seeking leave to further amend their pleading.  (*See* ECF Nos. 87, 91, 92, 97, and 98.)  Plaintiffs' proposed SAC seeks to assert a claim against First Advantage under the FHA for "refusal to make reasonable accommodations."  (SAC ¶ 67.)  Plaintiffs also claim that First Advantage violated Section 1681e(b) of the FCRA by reporting Martorelli's 2018 conviction as a "criminal" record.  (*Id.* ¶ 73.)  Finally, Plaintiffs claim that First Advantage violated Section 1681g of the FCRA by "withholding vital native access logs and metadata" from its disclosure of information in Martorelli's file.  (*Id.* ¶ 76.)

## LEGAL STANDARD

Although leave to amend a pleading should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), "a district court can deny leave if amendment would be futile."  *Stanley v. Bocock*, 160 F.4th 573, 580 (4th Cir. 2025).  A proposed amendment is futile if it would "fail to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 97 (4th Cir. 2016).

## ARGUMENT

Plaintiffs' proposed SAC is futile because it does not state any plausible claim for relief against First Advantage.  Plaintiffs' reasonable accommodation claim fails because Plaintiffs do not plead any facts to demonstrate that Martorelli was "handicapped" under the FHA.  *See* 42 U.S.C. § 3602(h).  Moreover, Plaintiffs' own allegations and exhibits confirm that First

Advantage never knew of Martorelli's alleged disability and never received any request for an accommodation. And even if it had, Plaintiffs' request that RPM immediately overlook her 2018 conviction was not a "necessary" accommodation, and RPM never actually denied Martorelli's request. *See* 42 U.S.C. § 3604(f)(3).

Martorelli's claim under Section 1681e(b) of the FCRA fails because First Advantage accurately reported that she had "criminal records." As explained below, Martorelli's guilty plea, the imposition of criminal punishment for her conviction, and the criminal nature of the underlying proceedings confirm that Martorelli was indeed convicted of a crime. Martorelli's claim under Section 1681g(a)(1) of the FCRA fails because First Advantage provided her with all information in her "file" as that term is defined under the FCRA. Finally, Turbeville cannot assert FCRA claims based on information in Martorelli's report or Martorelli's request for information in her file.

## A. Plaintiffs' FHA Claim Against First Advantage Fails.

"The FHA . . . requires an accommodation for persons with handicaps if the accommodation is (1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." *Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 603 (4th Cir. 1997). For several reasons, Plaintiffs cannot establish these essential elements.

*First*, Plaintiffs "fail[] to adequately identify [Martorelli's] mental disability." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 639 (4th Cir. 2016) (affirming dismissal of FHA claim premised on allegations that plaintiff had "some type of mental illness"). To state a claim under the FHA, Plaintiffs must allege *facts* to demonstrate that Martorelli had a qualifying "handicap," which the FHA defines as "a physical or mental impairment which substantially limits one or more . . . major life activities." 42 U.S.C. § 3602(h). Plaintiffs allege that Martorelli suffers from a "chronic mental health impairment that substantially limits major life

activities." (SAC¶ 14; *see also* SAC ¶¶ 2, 42 (referencing Martorelli's alleged "mental health disability" and "mental health condition").)  But "[v]ague references to an unspecified mental health 'diagnosis' and 'issue,' do not adequately allege that [Martorelli] is handicapped within the meaning of the FHA." *Mayo v. Performance Prop. Mgmt., Inc.*, No. 18-CV-03009-GPG, 2019 WL 8223567, at *4 (D. Colo. Mar. 22, 2019), *aff'd*, 780 F. App'x 653 (10th Cir. 2019). Likewise, Plaintiffs' "bald assertion that [Martorelli's] condition substantially limit[s] [her] major life activities" is nothing "more than a mere recitation of the elements" needed to prove a "handicap" under the FHA.  *Cash v. Magic City Motor Corp.*, No. 7:16-CV-00192, 2017 WL 281755, at *3 (W.D. Va. Jan. 20, 2017).[4]

*Second*, even if Martorelli had a qualifying disability or handicap, Plaintiffs do not and cannot allege that First Advantage ever knew about it.  Martorelli first disclosed her alleged condition to "the property management team" on May 17, 2025—several days after First Advantage completed her report.  (SAC ¶¶ 7, 8, 42.)  First Advantage "cannot be liable for discriminating against [Martorelli] for disabilities of which it was not aware." *Partee v. Powers Props.*, No. CV 3:23-4777-MGL-SVH, 2025 WL 3732158, at *5 (D.S.C. Aug. 14, 2025), *report and recommendation adopted*, No. CV 3:23-4777-MGL, 2026 WL 295699 (D.S.C. Feb. 4, 2026).  Plaintiffs' claim that First Advantage violated the FHA by "incorrectly categoriz[ing]" her conviction must therefore be rejected.  (SAC ¶ 23.)

*Third*, Martorelli never asked First Advantage for an accommodation, and First Advantage did not refuse to accommodate any such request.  *See Hardaway v. Equity Residential*

---

[4] Plaintiffs' purported concerns for "privacy" do not relieve them of their obligation to plead facts to support their claims. *Waddle v. Unum Grp.*, No. 1:17-CV-97, 2017 WL 11610732, at *4 (E.D. Tenn. Oct. 25, 2017) (finding plaintiff could not state a claim for relief without "alleg[ing] sufficient facts concerning her disability, even if embarrassing or of a personal nature").

6

*Mgmt., LLC*, No. CIV.A. DKC 11-1924, 2012 WL 3903489, at *6 (D. Md. Sept. 6, 2012) (dismissing reasonable accommodation claim where complaint "set forth no facts suggesting that a reasonable accommodation was requested or denied"). Plaintiffs' theory that First Advantage can be liable as a "joint tortfeasor" fails for the same reason. (*See* SAC ¶¶ 21–23.) Plaintiffs appear to contend that First Advantage acted as RPM's agent in producing Martorelli's report and is thus liable for RPM's alleged refusal to reasonably accommodate Martorelli's request to ignore the content of her report. But "[a]n agent's liability is based on the agent's own conduct and not conduct of the principal." Restatement (3d) of Agency § 7.01 cmt. c. Martorelli requested an accommodation from RPM, not First Advantage, and First Advantage did not play any role in RPM's decision-making process with respect to Martorelli's request. Thus, even if RPM wrongfully denied Martorelli's request for an accommodation, First Advantage cannot be liable for that decision under an agency theory.[5]

*Fourth*, Plaintiffs cannot show that Martorelli's requested accommodation was "necessary." *Bryant Woods*, 124 F.3d at 603. To do so, Plaintiffs must "plead facts that demonstrate a sufficient nexus between [Martorelli's] alleged disability and . . . the [alleged] denial of reasonable accommodations." *Stracco v. Townsquare Mark Ctr.*, No. 1:25-CV-129 (PTG/IDD), 2026 WL 910793, at *6 (E.D. Va. Mar. 31, 2026). That "nexus exists 'when the requested accommodation provides a direct amelioration of a disability's effect.'" *Evans v.*

---

[5] Courts that have addressed agency liability in the FHA context have confirmed the longstanding rule that such liability must be based on the agent's actions, not the principal's. *See, e.g.*, *Arnal v. Aspen View Condo. Ass'n, Inc.*, 245 F. Supp. 3d 1261, 1267 (D. Colo. 2017) (holding that "an agent who does an act" that violates the FHA "is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal"). Even if Plaintiffs could establish that First Advantage acted as RPM's agent with respect to the initial reporting of Martorelli's conviction, First Advantage had no role in RPM's decision in response to Martorelli's request to  overlook that conviction.

*UDR, Inc.*, 644 F. Supp. 2d 675, 690 (E.D.N.C. 2009) (quoting *Bell v. Tower Mgmt. Serv., L.P.*, No. CIV A 07-CV-5305 FLW, 2008 WL 2783343, at *7 (D.N.J. July 15, 2008)).  For example, accommodating a substance abuse problem by "establish[ing] a substance-free zone in the area of [the tenant's] apartment" would directly ameliorate the ongoing effects of that specific disability.  *Evans*, 644 F. Supp. 2d at 692.  So too would modifying a "policy on pets to permit a hearing-impaired person who relies on a dog for hearing assistance to keep the dog in the apartment."  *Id.*  In other words, "necessary" accommodations are those that directly "ameliorat[e] ongoing diminution in capacity."  *Id.*

In contrast, Martorelli asked the property—and not First Advantage—to immediately modify its rental criteria by ignoring "past criminal conduct that [allegedly] resulted from [a] disability."  *Id.*  Plaintiffs cannot show how that requested accommodation would address Martorelli's "disability-related needs."  *Id.*  Accordingly, Plaintiffs' reasonable accommodation claim "fail[s] as a matter of law" and must be dismissed.  *Id.* at 685 (confirming that landlords need not "attempt an accommodation from a criminal history rental policy based on [an alleged] disability" that allegedly led to a criminal conviction); *see also Funyak v. Pennrose Mgmt. Co.*, No. 2:19-CV-01331-CCW, 2021 WL 3080142, at *4 (W.D. Pa. July 21, 2021) (dismissing complaint that "fail[ed] to articulate why . . . disregard[ing] . . . prior negative rental history . . . [was] necessary to directly relieve any burden on the [plaintiff's] use and enjoyment of the dwelling directly caused by his  disabilities").

*Finally*, Plaintiffs' pleading and exhibits show that RPM never denied Martorelli's request for an accommodation.  On May 17, 2025, Plaintiffs sent a letter to "the property management team" insisting Martorelli's conviction was "tied to a diagnosed mental health condition" and "formally requesting a reasonable accommodation."  (SAC ¶ 42; ECF No. 1-1 at

8

10; ECF No. 98-8 at 3.)  In response, RPM simply asked Martorelli to dispute her report with First Advantage so that RPM could "rerun the screening" and make a final decision on Plaintiffs' eligibility for housing.  (ECF No. 98-8 at 4.)  Although Plaintiffs insist that their application should have been immediately approved, RPM's alleged "failure to immediately provide [Martorelli] with the specific accommodation that she sought does not constitute a refusal to provide a reasonable accommodation."  *Ungerleider v. Fleet Mortg. Grp. of Fleet Bank*, 329 F. Supp. 2d 343, 355 (D. Conn. 2004).  Housing providers "must be 'given an opportunity to make a final decision with respect to a request, which necessarily includes the ability to conduct a meaningful review of the requested accommodation to determine if [it] is required by law.'" *Oxford House, Inc. v. City of Salisbury,* No. CV RDB-17-1978, 2018 WL 3127158, at *9 (D. Md. June 26, 2018) (quoting *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 (11th Cir. 2008)).  Merely asking Martorelli to "get . . . information over to First Advantage" so that the property could "rerun the screening" was not a denial of Martorelli's accommodation request. (ECF No. 98-8 at 4.)[6]

---

[6] Plaintiffs' exhibits also establish that RPM remained "ready and willing to work with [Martorelli] on her accommodation request[]."  *Perry v. Encore At Blvd One LLC*, No. 1:23-CV-02188-GPG-SBP, 2025 WL 977680, at *9 (D. Colo. Mar. 9, 2025), *report and recommendation adopted sub nom.*, No. 23-CV-002188-GPG-SBP, 2025 WL 977704 (D. Colo. Mar. 28, 2025), *aff'd*, No. 25-1128, 2026 WL 636754 (10th Cir. Mar. 6, 2026).  For example, RPM offered to help Martorelli with the dispute process by "call[ing] First Advantage together." (ECF No. 98-8 at 5.)  After Martorelli disputed, and First Advantage resolved the dispute in her favor, RPM invited Plaintiffs to submit a new application.  (*Id.*)  Plaintiffs refused.  Thus, "if [Martorelli] actually never received [her requested] accommodation[], that was due to her own inaction rather than any discriminatory refusal to provide [the] accommodation on the part of any Defendant." *Perry*, 2025 WL 977680, at *9.

### B. Plaintiffs' FCRA Claims Against First Advantage Fail.

#### 1.    *Martorelli Cannot State a Claim under 15 U.S.C. § 1681e(b).*

Martorelli's claim under Section 1681e(b) of the FCRA must be dismissed because the information First Advantage reported about her was "not inaccurate." *Johnson v. Experian Info. Sols., Inc.*, No. PWG-15-558, 2015 WL 7769502, at *8 (D. Md. Nov. 17, 2015), *aff'd*, 670 F. App'x 778 (4th Cir. 2016); *see also Campbell v. Experian Info. Sols., Inc.*, No. CV 3:24-5772-JFA-SVH, 2024 WL 5498104, at *4 (D.S.C. Dec. 30, 2024) (explaining that plaintiffs must "make a threshold showing of inaccuracy" to state a claim under Section 1681e(b)).  The FCRA does not define "accuracy," but the "plain meaning" of that term "suggests [that it] involves an objective inquiry." *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025).  Thus, information "must be factually incorrect, objectively likely to mislead its intended user, or both to violate the maximal accuracy standard of the FCRA." *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1367 (11th Cir. 2024).

Reporting that Martorelli had "criminal records" was neither factually incorrect nor objectively misleading.  As shown in Plaintiffs' own exhibits, Martorelli pled guilty to disorderly conduct in October 2018 and was fined $300.  Because the FCRA is a federal statute, federal law dictates whether Martorelli's plea and punishment constitute a criminal conviction. *See Smith*, 2026 WL 688957, at *7 (collecting cases "holding that federal law, not state law, determines the existence of a conviction for purposes of FCRA reporting requirements"); *Rhodes v. First Advantage Background Servs. Corp.*, No. 24-11005, 2024 WL 4615775, at *6 (11th Cir. Oct. 30, 2024) (looking to "federal law" to determine whether consumer reporting agency accurately reported that consumer "was convicted of a crime").  And under federal law, a criminal conviction "occurs when the accused is found—***or pleads***—guilty." *Mulder v. McDonald*, 805 F.3d 1342, 1347 (Fed. Cir. 2015) (emphasis added); *United States v. White*, 14 F.3d 598 (4th Cir.

1993) ("A valid guilty plea constitutes admission of material elements of the crime and is itself a conviction of the offense charged.") (internal citations omitted).

The fact that Martorelli pled guilty to violating a municipal ordinance does not transform her criminal conviction into something else.  The ordinance that Martorelli violated  provides that "any person in violation thereof shall be subject to *punishment* as provided by law." *See* Borough of Franklin Lakes Code of Ordinances § 356-6 (emphasis added).  The ordinance further provides that, "upon *conviction*," a person shall "be *punished* by a fine not exceeding $200 for each offense or by imprisonment for a term not exceeding 30 days, or both, plus the cost of any damages." *Id.* § 356-16 (emphasis added).  These provisions reflect an unequivocal intent "to impose punishment" on individuals who violate the ordinance. *See Smith v. Doe*, 538 U.S. 84, 92 (2003) (explaining that statutory schemes are "criminal" where, as here, "the legislature intended to punish").  Accordingly, Martorelli's ordinance violation was a criminal conviction as a matter of federal law.  *Id.*; *see also Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1196 (7th Cir. 1987) (holding that it is not "possible to impose criminal punishment . . . on a person who [has] not been convicted of a crime").

Moreover, federal courts look to the nature of the underlying proceedings to determine whether someone has been convicted of a crime.  *See Avila v. Att'y Gen.*, 82 F.4th 250, 261 (3d Cir. 2023).  The court in *Avila*, for example, found it "reasonable" to focus on "whether the State adjudication [was] a substantively constitutional criminal proceeding using the guarantees provided in the Constitution" when determining if an individual had been "convicted of a crime

11

for immigration purposes." *Id.* at 260–61.[7]  In New Jersey, "proceedings in municipal court for violations of ordinances are governed by criminal procedural rules" and must comply with "all inherent constitutional guarantees that attach to [criminal] proceedings." *State v. Ehrman*, 469 N.J. Super. 1, 27 (App. Div. 2021); *see also State, Twp. of Pennsauken v. Schad*, 160 N.J. 156, 171 (1999) ("[M]unicipal court proceedings to prosecute violations of ordinances are essentially criminal in nature").

In short, Martorelli's guilty plea and punishment constituted a criminal conviction under federal law.  Thus, First Advantage correctly reported that Martorelli had "criminal records," and Martorelli cannot "plausibly allege[] that [First Advantage] reported inaccurate information under FCRA." *Smith*, 2026 WL 688957, at *8; *see also Harter v. RealPage, Inc.*, 218 F. Supp. 3d 535, 539 (E.D. Tex. 2016) (finding consumer reporting agency accurately reported that plaintiff "had a . . . criminal history" because "a criminal conviction . . . in fact existed").

### 2. *Martorelli Cannot State a Claim under 15 U.S.C. § 1681g*

The FCRA allows consumers to request certain information on file with consumer reporting agencies.  15 U.S.C. § 1681g(a)(1).  If a consumer provides proper identification with the request, the consumer reporting agency must disclose "[a]ll information in the consumer's file at the time of the request." *Id.*

Plaintiffs claim that First Advantage violated this provision by "withholding vital native access logs and metadata."  (SAC ¶ 76.)  But even if First Advantage had such materials,

---

[7] The Third Circuit in *Avila* examined and deferred to the Board of Immigration Appeals' ("BIA") interpretation of a federal immigration statute. *See Avila*, 82 F.4th at 253, 259–62 (discussing *Matter of S. Wong*, 28 I. & N. Dec. 518, 525 (BIA 2022)).  In *Wong*, the BIA found that, when determining whether an individual has been convicted of a crime, "the analysis should focus on whether the judgment exposes the accused to criminal penalties and whether the procedure used to arrive at that judgment conforms to the minimum constitutional requirements for criminal prosecutions." *Id.*

Martorelli was not entitled to "all information held" by First Advantage. *Danehy v. Experian Info. Sol., Inc.*, No. 5:18-CV-17-FL, 2018 WL 4623647, at *3 (E.D.N.C. Sept. 26, 2018). Instead, the term "file," as used in Section 1681g(a)(1), "means 'all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer.'" *Id.* (quoting *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018)).

First Advantage provided Martorelli with a copy of the background report it prepared on her for RPM. Thus, Martorelli "is in possession of the information that would be disclosed by [First Advantage] to another party." *Danehy*, 2018 WL 4623647, at *3 (dismissing claim under Section 1681g(a)(1) where plaintiff admitted that "defendant sent plaintiff his credit report" in response to his request for a "full consumer file disclosure"). Plaintiffs do not allege that First Advantage ever included "access logs and metadata" in any consumer report on Martorelli or that it "plans to do so in the future." *Id.* Accordingly, Plaintiffs' claim under Section 1681g(a)(1) must be dismissed. *See Tiakoh v. Experian Info. Sols., Inc.*, No. 8:25-CV-01706-WFJ-AEP, 2026 WL 914838, at *6 (M.D. Fla. Apr. 3, 2026) (dismissing Section 1681g(a)(1) claim premised on alleged omission of "information that would [not] be included on a consumer report").

### 3. *Turbeville Cannot Assert FCRA Claims Against First Advantage Based on Martorelli's Information and Full File Disclosure Request.*

Turbeville claims that he was harmed by First Advantage reporting **Martorelli's** criminal history. (*See* SAC ¶¶ 7, 24 (alleging that First Advantage reported inaccurate information "on Plaintiff Martorelli's profile"); ECF No. 1-1 at 66; ECF No. 98-8 at 3.) Turbeville likewise claims that he was harmed by First Advantage "withholding vital native access logs and metadata" in response to **Martorelli's** request for her file. (*See* SAC ¶ 76; ECF No. 1-1 at 58,

75.)  The FCRA, however, "does not provide a private cause of action for every person harmed by [an alleged] violation."  *Kropp v. RentGrow, Inc.*, No. 25-CV-1076, 2025 WL 3227337, at *2 (D. Md. Nov. 19, 2025).  Instead, the FCRA provides that a defendant who willfully "fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable ***to that consumer***" for damages.  15 U.S.C. § 1681n(a) (emphasis added); *see also id.* § 1681*o*(a) (same).

Plaintiffs allege that First Advantage violated two "requirement[s] imposed" by the FCRA.  The first obligates consumer reporting agencies that prepare consumer reports to "follow reasonable procedures to assure maximum possible accuracy of the ***information concerning the individual about whom the report relates***."  15 U.S.C. § 1681e(b) (emphasis added).  Plaintiffs challenge the accuracy of information concerning Martorelli, not Turbeville.  Accordingly, the statutory "requirement imposed" on First Advantage was "with respect to" Martorelli, not Turbeville, and First Advantage cannot be "liable to" Turbeville for allegedly violating that requirement.  15 U.S.C. §§ 1681n, 1681o.  The same is true under Section 1681g(a)(1), which requires consumer reporting agencies to disclose "to the consumer . . . information in the consumer's file."  15 U.S.C. § 1681g(a)(1).  The claim asserted under Section 1681g(a)(1) concerns "Martorelli's request for her [f]ull [f]ile [d]isclosure."  (ECF No. 1-1 at 58.)  Turbeville never made such a request and does not allege that he was entitled to receive information in Martorelli's consumer file.  Any injury that Turbeville suffered, at best, is "merely derivative of the injury asserted by" Martorelli.  *Ward v. Trans Union Corp.*, No. 4:04-CV-88, 2006 WL 8438484, at *7 (E.D.N.C. Feb. 16, 2006) (quoting *Williams v. Equifax Credit Info. Servs.*, 892 F. Supp. 951, 955 (E.D. Mich. 1995)).

14

## CONCLUSION

For the reasons stated above, First Advantage respectfully requests that this Court grant its motion and dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice, and without leave to amend.

Respectfully submitted,

FIRST ADVANTAGE BACKGROUND SERVICES CORP.


By: *s/Adam N. Yount*
Adam N. Yount
Fed. ID No. 10313
ayount@hsblawfirm.com
E. Elliot Condon
Fed. ID No. 13102
econdon@hsblawfirm.com
Carlisle B. Allen
Fed. ID No. 14288
callen@hsblawfirm.com
HAYNSWORTH SINKLER BOYD, P.A.
134 Meeting Street, Third Floor (29401)
P.O. Box 340
Charleston, SC 29402-0340
Telephone: (843) 722-3366

Frederick T. Smith
Georgia Bar No. 657575*
fsmith@seyfarth.com
Esther Slater McDonald
Georgia Bar No. 649005*
emcdonald@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia  30309-3958
Telephone: (404) 885-1500

*Admitted pro hac vice*

Attorneys for Defendant

Date: June 30, 2026