# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA



Preston Wallace Turbeville
Marissa Martorelli,

   Plaintiffs,

 vs.

RPM Living, LLC,
Gateway Communities of Myrtle Beach, LLC,
 *d/b/a The Willows at Grande Dunes,*
First Advantage Background Services Corp.,
Jenny Suggs, *(individually and in her official
capacity)*
Jennifer Battenfeld, *(individually and in her
official capacity)*
Andrew O.H. Gardner, *(in his official
capacity as Broker-in-Charge)*

   Defendants.

C/A: 4:25-cv-12579-JD-TER

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR**

**LEAVE TO FILE SECOND AMENDED COMPLAINT**

NOW COME Plaintiffs Preston Wallace Turbeville and Marissa Martorelli, proceeding *pro se*,

and respectfully submit this Reply Memorandum in further support of their Motion for Leave to

File Second Amended Complaint.

As a preliminary clarification, Defendant First Advantage Background Services Corp.'s June 30,

2026 filing, ECF No. 136, served both as First Advantage's reply in support of its own Motion to

Dismiss and as its response in opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint, ECF No. 98. Plaintiffs submit this filing strictly as their reply to First Advantage's opposition to leave to amend under Federal Rule of Civil Procedure 15(a)(2).

Unless otherwise stated, references to Exhibits A-H refer to Plaintiffs' proposed Second Amended Complaint package. Exhibit A is the proposed Second Amended Complaint. Exhibit B is the refund check/financial denial instrument. Exhibit D is the HUD tenant-screening authority. Exhibit E is the RPM license-disclosure register. Exhibit F is the online leasing portal invoice and payment record. Exhibit H is Plaintiffs' chronology of events, emails, and voicemails, which incorporates the original complaint exhibits referenced by First Advantage as ECF Nos. 1-1, 1-2, and 1-3. References to the First Advantage tenant-screening report, denial documents, New Jersey record, and related original exhibits are cited, where applicable, to ECF No. 1-1 and/or Exhibit H's incorporated original record. References to discovery deficiencies, audit trails, metadata, system logs, and First Advantage's discovery posture are cited to ECF No. 131 and ECF No. 131-1.

**ARGUMENT**

First Advantage's opposition does not establish futility. It attempts to convert a Rule 15 amendment inquiry into a premature merits trial by asking the Court to resolve disputed facts against pro se Plaintiffs. At this stage, the question is not whether First Advantage can later persuade a jury that its tenant-screening system was reasonable. The question is whether Plaintiffs' proposed Second Amended Complaint states plausible claims. It does.

First Advantage's own brief confirms that this case turns on factual issues: what the report said, what was verified, who accessed or reissued it, whether its automated output caused the denial, and whether Plaintiffs were injured before First Advantage later removed the disputed item.

## I. First Advantage's Futility Argument Improperly Asks the Court to Resolve Facts.

First Advantage argues that leave to amend should be denied as futile because the proposed Second Amended Complaint supposedly fails under Rule 12(b)(6). ECF No. 136 at 4-5. That argument applies the correct standard in name only. A futility objection does not permit a defendant to win factual disputes by recasting Plaintiffs' allegations and exhibits in its own favor. The Court must accept well-pleaded allegations as true and draw reasonable inferences for Plaintiffs.

The proposed pleading is not speculative. It is supported by the tenant-screening report, the denial record, the written reasonable-accommodation request, the dispute timeline, the refund record, the later revised report, and the discovery record. First Advantage itself admits that RPM ordered background reports from First Advantage and denied Plaintiffs' application because of information in Martorelli's report. ECF No. 136 at 2-3. It further admits that First Advantage later removed the disputed information after it "did not receive the court records needed to verify" the information. ECF No. 136 at 3 n.3.

Those admissions defeat any claim that amendment is facially futile. First Advantage is not identifying a clean pleading defect. It is asking the Court to adopt First Advantage's preferred factual narrative before discovery is complete.

## II. First Advantage's Subjective-Knowledge Defense Does Not Defeat FHA Discriminatory-Effect and But-For Causation.

First Advantage argues that Plaintiffs' FHA claim fails because First Advantage did not know of Martorelli's disability, did not receive a reasonable-accommodation request from her, and did not personally deny an accommodation. ECF No. 136 at 5-9. That argument only answers a narrow direct-accommodation theory. It does not defeat Plaintiffs' discriminatory-effect theory.

Plaintiffs do not allege merely that First Advantage personally received and refused a reasonable-accommodation request. Plaintiffs allege that First Advantage designed, sold, and deployed an automated tenant-screening practice that used rigid criminal-record filters, non-individualized classification logic, and a binary fail/decline output that made housing unavailable.

Under 24 C.F.R. § 100.500, discriminatory intent or subjective knowledge is not an element of a discriminatory-effect claim. Liability may attach to a policy, practice, automated scoring mechanism, or algorithmic architecture that causes a discriminatory effect on a protected class. The proposed Second Amended Complaint identifies the challenged practice: First Advantage's automated tenant-screening product, criminal-record classification logic, and disqualifying "DECLINE" / "FAIL" output. It alleges causation: RPM denied Plaintiffs' housing application because of information in Martorelli's First Advantage report. ECF No. 136 at 2-3. It also alleges protected-class impact: the system predictably makes housing unavailable to disabled applicants whose protected medical conditions are connected to old, minor, nonviolent, municipal, or misclassified records.

First Advantage cannot escape FHA scrutiny by calling itself a vendor where its own product allegedly functioned as the automated gatekeeper that generated the housing-disqualifying result. The FHA does not contain a tenant-screening-company exemption. Section 3604(f)(1) prohibits conduct that "otherwise make[s] unavailable or den[ies]" housing because of handicap. Section 3604(f)(2) reaches discrimination in the "provision of services or facilities in connection with" a dwelling. A screening company that allegedly supplies the automated decision mechanism used to reject a disabled applicant is not categorically immune simply because the landlord issues the final denial.

Nor does First Advantage escape liability merely because RPM issued the final housing denial. Under ordinary tortfeasor causation principles, a defendant need not be the sole cause of an injury to be a legal cause. A defendant remains liable where its conduct is a but-for cause and a direct, proximate cause of the harm. Here, Plaintiffs plausibly allege a direct causal chain: First Advantage generated the misleading criminal classification and automated fail/decline output; RPM relied on that output; and Plaintiffs' joint housing application was denied. But for First Advantage's allegedly inaccurate and discriminatory screening output, RPM would not have possessed the same disqualifying report basis for the denial.

This causal chain is not remote or speculative. First Advantage's product was not background noise several steps removed from the injury; it was the alleged first domino and operative gatekeeping mechanism inside the leasing transaction. The injury asserted—the loss of housing opportunity—is directly related to the injurious conduct alleged—the generation and

transmission of the housing-disqualifying tenant-screening result. That satisfies the FHA's direct-relation/proximate-cause requirement at the pleading stage.

Whether First Advantage can later prove lack of causation, business necessity, or the absence of a less discriminatory alternative requires evidence. Those are discovery and merits issues, not futility issues.

### III. Plaintiffs Did Not Abandon the Process; They Were Injured Before the Later Correction.

First Advantage argues that Plaintiffs failed to "allow the dispute process to unfold" because RPM would not immediately approve their application. ECF No. 136 at 3. It further argues that First Advantage completed the reinvestigation on June 16, 2025, removed the disputed item, issued a revised report to RPM, and that RPM invited Plaintiffs to reapply. ECF No. 136 at 3-4.

Plaintiffs did not abandon anything. They disputed the report. They requested accommodation. They explained that the reported background item was connected to a protected medical episode. They offered to discuss the issue and provide support. The problem was that First Advantage's report had already caused the denial, and RPM's response was to route Plaintiffs back through the same third-party screening chain instead of conducting a meaningful individualized review as required by the FHA.

First Advantage's "wait and see" theory would require disabled housing applicants to remain in housing limbo while an institutional screening chain slowly corrects an error that should not have been published in the first place. Nothing in the FCRA or FHA required Plaintiffs to remain

exposed to residential instability, uncertainty, and further discrimination while waiting to see whether the landlord and screening vendor might later fix the problem.

The June 16 correction does not erase the May 13 denial. It does not erase the May 17 reasonable-accommodation request. It does not erase the May 20 withdrawal based on Plaintiffs' stated fear and loss of trust. And it does not erase the alleged backend re-access or reissue after the application had already been closed, refunded, and withdrawn. At most, First Advantage's timeline creates factual disputes for discovery and trial. It does not establish futility.

## IV. The FCRA Accuracy Claim Is Plausible, and Later Deletion Does Not Cure Earlier Publication.

First Advantage argues that Martorelli cannot state a claim under 15 U.S.C. § 1681e(b) because the report was "not inaccurate." It asserts that reporting "criminal records" was neither factually incorrect nor objectively misleading because Martorelli pled guilty to a municipal ordinance violation, was fined, and because First Advantage contends federal law treats the matter as a criminal conviction. ECF No. 136 at 10-12.

Plaintiffs do not rest their § 1681e(b) claim on an abstract debate over whether some municipal ordinance proceedings can ever be called "criminal" under some federal-law framework. The claim is narrower and stronger: First Advantage did not accurately report the actual New Jersey record it claims to have reported.

First Advantage did not merely tell RPM, "This was a municipal ordinance violation under Borough of Franklin Lakes Code § 356-6." Plaintiffs allege that the First Advantage tenant-

screening report and denial record, contained in the original complaint exhibits incorporated through Exhibit H and cited by First Advantage at ECF No. 1-1 at 38 and 40, displayed a materially misleading criminal-court string, including: **"SOURCE: BERGEN SUPERIOR COURT-CRIMINAL DIVISION > MAJOR CATEGORY: JUDGEMENT & PROPERTY > DISPOSITION: GUILTY."**

That presentation would objectively lead an ordinary housing provider to believe Martorelli had a serious state-level criminal court conviction, not a minor municipal ordinance matter. First Advantage's argument depends on reducing the report to the generalized phrase "criminal records." But § 1681e(b) asks whether the consumer reporting agency followed reasonable procedures to assure maximum possible accuracy. A report can be actionable where it is factually incorrect, materially incomplete, or presented in a way likely to mislead the intended user.

First Advantage's own footnote confirms the plausibility of this claim. It admits that it "did not receive the court records needed to verify the information disputed by Martorelli within thirty days" and therefore deleted the disputed item. ECF No. 136 at 3 n.3. Plaintiffs contend this is not a harmless later correction. It supports the inference that First Advantage published a housing-disqualifying criminal result before obtaining the court records necessary to verify what the record actually was.

First Advantage cannot simultaneously argue that its report was unquestionably accurate while admitting it lacked the court records needed to verify the disputed information. Whether First Advantage's procedures were reasonable, whether the report was objectively misleading, whether the source string was accurate, and whether the final municipal disposition was properly

captured are factual issues that cannot be resolved against Plaintiffs on a motion for leave to amend.

Plaintiffs agree that deletion alone is not a formal confession of inaccuracy. But the deletion still matters. It shows that the report was published first and verified later, if ever. The later correction also does not retroactively erase the housing denial, the loss of trust in the process, the forced dispute, the reasonable-accommodation conflict, the withdrawal, or Plaintiffs' claimed damages.

## V. The § 1681g and Audit-Trail Issues Are Discoverable and Plausibly Pleaded.

First Advantage argues that Martorelli cannot state a § 1681g claim because she was not entitled to "all information held" by First Advantage. It relies on *Danehy v. Experian* and argues that "file" means information that might be furnished, or has been furnished, in a consumer report. ECF No. 136 at 12-13. It further contends that because it provided a copy of the background report prepared for RPM, Martorelli received everything required by § 1681g(a)(1). ECF No. 136 at 13.

First Advantage's § 1681g argument is too narrow. Plaintiffs do not allege merely that First Advantage failed to provide a duplicate copy of the landlord-facing report. Plaintiffs allege that First Advantage failed to provide a complete statutory disclosure showing the actual data lifecycle of the consumer file, including the sources of the information, the entities or end-users who procured or accessed the report, and the backend reissue or access chain.

Section 1681g is not limited to subsection (a)(1). It also requires disclosure of "the sources of the information" under § 1681g(a)(2) and the identification of each person, including each end-user,

who procured the consumer report during the relevant period under § 1681g(a)(3). First Advantage's brief largely ignores those statutory categories and instead argues as if Plaintiffs demanded irrelevant corporate trivia.

Plaintiffs contend that requested logs and metadata are not irrelevant "backend" material where they identify statutory sources, recipients, end-users, access dates, reissue events, or the mechanism by which the report was modified and republished. Those materials are directly tied to the § 1681g claim and to Plaintiffs' related theories of impermissible access, maximum possible accuracy, and willfulness.

Nor does *Danehy* bar discovery. *Danehy* addressed the scope of a consumer's out-of-court file disclosure under § 1681g(a)(1). It does not immunize relevant electronically stored information from discovery under Rule 26 once a federal lawsuit is pending. Even § 1681g(a)(2) recognizes that sources may become available "under appropriate discovery procedures" once an action is brought. First Advantage cannot convert a pre-suit disclosure limitation into a federal discovery shield.

First Advantage also cannot treat audit trails as both nonexistent and protected. Plaintiffs' Motion to Compel, ECF No. 131 and ECF No. 131-1, seeks native data tables, software coding parameters, system tracking matrices, data-broker transmission logs, access logs, audit trails, and related electronic records that would show the lifecycle of the report. If no access logs, audit trails, reissue records, or system metadata exist, that absence is itself probative of unreasonable procedures for a company selling automated housing-screening products. If such records do exist, then they are discoverable because they identify who accessed the file, when it was

accessed, what was changed, what was reissued, and whether any post-withdrawal access occurred after the housing file was closed.

The contradiction alone confirms the issue is discoverable and not properly resolved through futility.

## VI. Plaintiffs Adequately Plead Disability, Accommodation, and Medical-Privacy Issues.

First Advantage argues that Plaintiffs fail to plead a qualifying handicap because they use terms such as "mental health condition" and "chronic mental health impairment." It relies on *Thomas*, *Mayo*, and *Cash*, and argues that privacy concerns do not excuse Plaintiffs from pleading sufficient facts. ECF No. 136 at 5-6 & n.4. It also argues the requested accommodation was not necessary because Martorelli allegedly asked RPM to ignore past criminal conduct resulting from disability. ECF No. 136 at 7-8.

Plaintiffs have alleged more than a vague personal preference or conclusory label. Plaintiffs allege that Martorelli has a chronic mental health impairment that substantially limits major life activities and that the relevant 2018 incident was connected to that disability. See proposed SAC ¶¶ 2, 8, 14, 42, 67. At the pleading stage, that is sufficient to place Defendants on notice of the disability theory.

First Advantage's demand for greater public detail ignores Plaintiffs' legitimate privacy concerns. Plaintiffs have sought to protect sensitive medical records through appropriate confidential mechanisms, including confidential production and in-camera review. A disabled litigant should not be forced to publish private psychiatric, neurological, or Social Security

disability records on PACER merely to survive Rule 12. If the Court believes additional factual specificity is required, the appropriate remedy under Rule 15 is to allow a targeted amendment or confidential submission, not to deny leave with prejudice.

Plaintiffs also did not demand unlawful preferential treatment. They requested individualized review of a disability-related barrier that was being mechanically used to deny housing. The requested accommodation was not "ignore all criminal history." It was: do not mechanically apply a rigid criminal-screening result to deny housing where the reported item was inaccurate, unverifiable, misclassified, minor, old, municipal in nature, and connected to a protected disability episode.

That accommodation directly related to the barrier preventing equal housing opportunity. Without individualized review, the automated screening output made the dwelling unavailable. With individualized review, Plaintiffs could be considered on the actual facts rather than on a misleading criminal-court label. Whether that accommodation was reasonable or necessary is fact-intensive and cannot be resolved on futility.

Plaintiffs further contend that routing a disabled applicant back through the same screening vendor is not the same as a meaningful accommodation. The written request asked RPM to engage in an individualized housing review. RPM instead treated First Advantage's backend dispute process as the gatekeeper. A landlord cannot outsource its FHA duties to a consumer reporting agency. And a consumer reporting agency cannot sell the automated gatekeeping product, generate the failure code, and then claim it has no connection to the housing denial.

Finally, Plaintiffs place First Advantage on notice that its continued litigation demand for unnecessary public exposure of Martorelli's confidential medical and disability records will be used as evidence in any punitive-damages phase of trial. Plaintiffs do not contend that Defendants are barred from testing the existence of a claimed FHA disability through lawful discovery. Plaintiffs contend that First Advantage crossed the line by attempting to force a disabled litigant to publicly disclose sensitive psychiatric, neurological, and Social Security disability materials on the open federal docket after Plaintiffs already offered protected avenues for verification, including confidential production and in-camera review. That conduct is evidence of reckless indifference to Martorelli's privacy, dignity, and federally protected disability rights.

## VII. Turbeville's Joint-Transaction Injury and the June 16 Reissue Support Standing, Discovery, and Willfulness.

First Advantage argues that Turbeville cannot assert FCRA claims because the disputed information appeared in Martorelli's report and the full-file disclosure request concerned Martorelli's file. It relies on *Kropp v. RentGrow* and argues any injury to Turbeville is merely derivative. ECF No. 136 at 13-14. First Advantage also characterizes the June 16 revised report as part of the reinvestigation and states that RPM invited Plaintiffs to reapply after the revised report was issued. ECF No. 136 at 3-4.

First Advantage oversimplifies the transaction. This was not an abstract third-party injury. Plaintiffs applied as a joint household. The application operated under one leasing transaction. Exhibit F, the online leasing portal transaction invoice showing Confirmation No. 620544114

and payment of the application/admin charges, and Exhibit B, the uncashed refund check issued jointly to both Plaintiffs after the denial, show that the application operated as one joint commercial housing transaction funded through Turbeville's personal payment account.

Turbeville therefore alleges direct injuries: loss of the joint housing opportunity, loss of funds and time, housing instability, emotional distress, and obstruction of information necessary to understand the denial of the application he funded. Those injuries satisfy Article III. Whether every FCRA subsection permits Turbeville to recover statutory damages is a merits question that does not justify denying leave as to the entire proposed amendment, and certainly does not defeat Martorelli's FCRA claims or Turbeville's FHA-related transactional injuries.

The June 16 issue also supports discovery and willfulness. Plaintiffs allege that by June 16, the housing file had already been closed, the application had been withdrawn, and the admin fee had been refunded. If First Advantage or RPM accessed, reissued, or republished Martorelli's consumer report after the transaction was dead, that creates a plausible question of permissible purpose, disclosure accuracy, recipient identification, and willfulness.

The audit trail matters because it will show who requested the reissue, who accessed the report, what permissible purpose was asserted, whether the original authorization still applied, and whether the revised report was sent to an end-user after Plaintiffs withdrew. Those allegations support willfulness and punitive damages at the pleading stage. Whether Plaintiffs ultimately prove willfulness is for discovery and, if supported by evidence, the jury.

## CONCLUSION

First Advantage's opposition confirms that this case turns on disputed facts, electronic records, report wording, source data, recipient/access logs, the meaning of the New Jersey disposition, the reasonableness of First Advantage's procedures, and the causal role of its automated tenant-screening product. Those issues cannot be resolved against Plaintiffs at the Rule 15 stage.

Plaintiffs respectfully request that the Court grant their Motion for Leave to File Second Amended Complaint, accept the Second Amended Complaint as the operative pleading, and deny First Advantage's futility objection.

Respectfully submitted,

Date: July 2, 2026

**Preston Wallace Turbeville**

Plaintiff, *Pro Se*

173 Gadwall Way, Unit 3400

Murrells Inlet, SC 29576

**Marissa Martorelli**

Plaintiff, *Pro Se*

173 Gadwall Way, Unit 3400

Murrells Inlet, SC 29576

## CERTIFICATE OF SERVICE

I hereby certify that upon filing with the Clerk of Court, the within document will be uploaded to

the Court's CM/ECF system, which will provide notice to all counsel of record.

Date: July 2, 2026


Preston Wallace Turbeville

Plaintiff, *Pro Se*


Marissa Martorelli

Plaintiff, *Pro Se*